DAVID GROSSMAN (SBN 211326)
dgrossman@loeb.com
ERIN SHIELDS (SBN 337121)
eshields@loeb.com
LOEB & LOEB LLP
10100 Santa Monica Blvd., Suite 2200
Los Angeles, CA  90067
Telephone: 310.282.2000
Facsimile: 310.282.2200

Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYARDO RENO SANDY,<br><br>                 Plaintiff,<br><br>        v.<br><br>PARAMOUNT PICTURES<br>CORPORATION,<br><br>                 Defendant. | Case No.: 2:24-cv-04403-RGK-RAOx<br><br>**DEFENDANT'S MOTION TO DISMISS**<br><br>[Filed concurrently: *Declaration of David Grossman; Request for Judicial Notice; Notice of Lodging; [Proposed] Order*]<br><br>Date:  November 18, 2024<br>Time: 9:00 a.m.<br>Courtroom: 850<br><br>Complaint Filed: May 28, 2024 |

**TO ALL PARTIES AND THEIR COUNSEL OF RECORD:**

**PLEASE TAKE NOTICE** that, on November 18, 2024, at 9:00 a.m., in Courtroom 850 of the above-captioned court, located at 255 East Temple Street, Los Angeles, CA 90012, Judge R. Gary Klausner presiding, Defendant Paramount Pictures Corporation ("Defendant") will, and hereby does move to dismiss Plaintiff Bayardo Sandy's ("Plaintiff") Complaint in its entirety.  This motion is made on the grounds that Plaintiff has failed to adequately allege a plausible theory of access, and direct examination of Plaintiff's and Defendant's works shows that they are not substantially similar as a matter of law.  Accordingly, Plaintiff's claim for copyright infringement, as well as well as his claims for declaratory and injunctive relief, which depend on a finding that Defendant infringed Plaintiff's work, must be dismissed.

The Motion to Dismiss is based upon this Motion, the supporting Memorandum of Points and Authorities, the concurrently filed Request for Judicial Notice, all records and pleadings on file with the Court in this action and on such further evidence and argument as may be presented at or before the time of hearing.

This motion is made following the conference of counsel pursuant to L.R. 7-3 which took place on October 7-8, 2024.  (*See* Declaration of David Grossman ("Grossman Decl.") ¶5, Ex. D).

Dated:  October 17, 2024

LOEB & LOEB LLP
DAVID GROSSMAN
ERIN SHIELDS

By: ___*/s/ David Grossman*___
David Grossman
Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

2

DEFENDANT'S MOTION TO DISMISS

# **TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ...................................................................................... 1

II.   STATEMENT OF FACTS ........................................................................ 2

    A.    Defendants' Infinite, Based on The Reincarnationist Papers ............. 2

    B.    Plaintiff's The Link. ............................................................................ 5

III.  ARGUMENT ........................................................................................... 6

    A.    Plaintiff Fails to Plausibly Allege Defendants' Access to The Link. ................................................................................................... 6

    B.    The Works Are Not Substantially Similar. ......................................... 9

        1.    To State a Claim, Plaintiff Must Demonstrate "Substantial Similarity" Between the Works' Protected Elements ...................................................................................... 9

        2.    The Court Can Compare the Works and Determine Lack of Substantial Similarity on a Motion to Dismiss. .......... 10

        3.    The Protectable Elements of the Works Are Not Similar. ................................................................................... 11

IV.  CONCLUSION ..................................................................................... 17

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Art Attacks Ink, LLC v. MGA Enter. Inc.*,
  581 F.3d 1138 (9th Cir. 2009) ............................................................... 7

*Benay v. Warner Bros. Entm't, Inc.*,
  607 F.3d 620 (9th Cir. 2010) ............................................... 12, 13, 14

*Berkic v. Crichton*,
  761 F.2d 1289 (9th Cir. 1985) ............................................................. 10

*Bernal v. Paradigm Talent & Literary Agency*,
  788 F. Supp.2d 1043 (C.D. Cal. 2010) .............................................. 8, 9

*Carlini v. Paramount Pictures Corp.*,
  No. 21-55213, 2022 U.S. App. LEXIS 5480 (9th Cir. Mar. 2, 2022) ............... 10

*Cavalier v. Random House, Inc.*,
  297 F.3d 815 (9th Cir. 2002) .............................................................. 10

*Cline v. Reetz-Laiolo*,
  329 F. Supp. 3d 1000 (N.D. Cal. 2018) ............................................... 17

*DC Comics v. Towle*,
  802 F.3d 1012 (9th Cir. 2015) ............................................................ 14

*DuMond v. Reilly*,
  No. CV 19-8922-GW-AGRx, 2021 U.S. Dist. LEXIS 37241 (C.D.
  Cal. Jan. 14, 2021) ........................................................................ 16

*Fillmore v. Blumhouse Prods., LLC*,
  No. 2:16-cv-04348-AB-SS, 2017 U.S. Dist. LEXIS 211021 (C.D.
  Cal. July 7, 2017) ...................................................................... 11, 16

*Funky Films v. Time Warner Entm't Co., L.P.*,
  462 F.3d 1072 (9th Cir. 2006) ...................................................... 10, 11

*Gable v. NBC*,
  727 F. Supp. 2d 815 (C.D. Cal. 2010) ................................................ 13

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

iv

DEFENDANT'S MOTION TO DISMISS

*Gray v. Perry*,
   No. 2:15-cv-05642-CAS, 2018 U.S. Dist. LEXIS 138263 (C.D. Cal.
   Aug. 13, 2018) ........................................................................................... 8

*Griffin v. Peele*,
   No. EDCV 17-01153 JGB (KKx), 2018 U.S. Dist. LEXIS 226086
   (C.D. Cal. Jan. 18, 2018) ....................................................................... 8, 9

*Jason v. Fonda*,
   526 F. Supp. 774 (C.D. Cal. 1981) ............................................................. 7

*Kouf v. Walt Disney Pictures & Television*,
   16 F.3d 1042 (9th Cir. 1994) ................................................................ 9, 13

*Litchfield v. Spielberg*,
   736 F.2d 1352 (9th Cir. 1984) ................................................................... 13

*Lois v. Levin*,
   No. 2:22-cv-00926-SVW-ADS, 2022 U.S. Dist. LEXIS 168358
   (C.D. Cal. Sept. 16, 2022) .......................................................................... 8

*Loomis v. Cornish*,
   836 F.3d 991 (9th Cir. 2016) .................................................................... 7, 8

*Masterson v. Walt Disney Co.*,
   821 F. App'x 779 (9th Cir. 2020) ............................................................. 10

*Olson v. NBC*,
   855 F.2d 1446 (9th Cir. 1988) ................................................................... 16

*Panton v. Strong*,
   2018 WL 5099666 (C.D. Cal. Mar. 14, 2018) ........................................... 9

*Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*,
   602 F.3d 57 (2d Cir. 2010) ....................................................................... 11

*Rentmeester v. Nike, Inc.*,
   883 F.3d 1111 (9th Cir. 2018) .......................................................... 6, 7, 9, 10

*Rice v. Fox Broad. Co.*,
   330 F.3d 1170 (9th Cir. 2003) ..................................................................... 7

*Rose v. Connelly*,
   38 F. Supp. 54 (S.D.N.Y. 1941) ................................................................ 15

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

*Shame on You Prods. v. Banks*,
   120 F. Supp. 3d 1123 (C.D. Cal. 2015),
   *aff'd* 690 F. App'x 519 (2017)..................................................................14, 16, 17

*Silas v. HBO, Inc.*,
   201 F. Supp.3d 1158 (C.D. Cal. 2016).........................................................11, 14

*Three Boys Music Corp. v. Bolton*,
   212 F.3d 477 (9th Cir. 2000)..............................................................................7

*Washington v. ViacomCBS, Inc.*,
   No. CV 20-435 CBM (PJWx), 2021
   U.S. Dist. LEXIS 104820 (C.D. Cal. May 21, 2021).........................................9

*Whitehead v. Netflix, Inc.*,
   No. 22-cv-04049-CRB, 2022
   U.S. Dist. LEXIS 215901 (N.D. Cal. Nov. 30, 2022).........................................7

*Zella v. E.W. Scripps Co.*,
   529 F. Supp.2d 1124 (C.D. Cal. 2007)..............................................................10

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

vi

DEFENDANT'S MOTION TO DISMISS

## MEMORANDUM OF POINTS AND AUTHORITIES

## I.    INTRODUCTION

Defendant's 2021 film, *Infinite*, is about a protagonist who is an "Infinite," one of 500 people who can remember their past lives, and retain the skills they developed during those lives.  He and his fellow "Believers" (Infinites who are dedicated to using their skills and knowledge to protect humanity) battle against evil Nihilists – Infinites who see their power as curse, and seek to eradicate all life on earth in order to end the cycle of reincarnation.  *Infinite* is based on and credits *The Reincarnationist Papers*, a 2009 novel that is also about a group that remember their past lives.

Plaintiff alleges that *Infinite* is not based on *The Reincarnationist Papers*, but rather infringes his own novel, *The Link*, which also involves the unprotectible concept of reincarnated characters.  However, Plaintiff does not set forth a single fact plausibly establishing that anyone involved in creating *Infinite* ever heard of his novel, much less copied it.  For this reason alone, Plaintiff's complaint must be dismissed.

Moreover, when the Court actually reviews the works themselves, it will see that there is no legally cognizable "substantial similarity" between these two works. *Infinite's* protagonist, Evan, is diagnosed with schizophrenia, but later learns that his diagnosis can be explained by the fact that he is one of approximately 500 Infinites – people who remember their past lives, and are split into warring factions of Nihilists and Believers.  Evan must remember his previous life in order to locate the "Egg," a device created by the Nihilists to achieve their goal of ending all life on Earth.  The two groups battle each other in Mexico City, New York, in a mountain retreat in Asia, and at a large estate in Scotland.  Eventually, Evan and his friends secure the Egg and defeat the Nihilists, with Evan and his friends dying in the process.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

1

DEFENDANT'S MOTION TO DISMISS

*The Link*, by contrast, is about Sydney Tobias, a famous astrologer and novelist who begins to remember his past lives: meeting the three wise men after Jesus Christ's birth, visiting the library of Alexandria, and consulting with Nostradamus in 1500s France. Sydney's adversary throughout these lifetimes is the Biblical figure of Judas Iscariot, who, in his own reincarnations, has fomented genocide against the Jewish people. Sydney is on a quest to locate the reincarnated version of Jesus Christ and, utilizing his astrological predictions, he eventually finds Jesus in the form of a boy named Charlie living in Alabama. The story ends on September 11, 2001, when Jesus/Charlie attends a multi-denominational religious service and frees the souls of soldiers killed in military conflicts. The Jesus/Charlie character also persuades Judas that he was misguided in his quest to eradicate the Jews.

Any "similarity" between these vastly different works derives from the highly abstracted, non-protectible concept of a man who remembers his past lives, and uses that ability to try to help good triumph over evil. Copyright law is clear that alleged similarities in basic plot ideas or general concepts cannot give rise to an infringement claim, and a review of the works demonstrates that their respective treatments of these underlying concepts are **entirely dissimilar**.

Courts in this District have not hesitated to dismiss copyright claims at the pleading stage in these circumstances. Because no amount of discovery can change the content of the works, Plaintiff's Complaint should be dismissed with prejudice.

## II.    STATEMENT OF FACTS

### A.    Defendants' *Infinite*, Based on *The Reincarnationist Papers*

*Infinite:* Defendants' film opens with a voiceover, explaining that there are people known as Infinites who remember their past lives, and are split between factions of Believers and Nihilists.[1]

---

[1] A copy of *Infinite* has been lodged with the Court. *See* Notice of Lodging Ex. A.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

2

DEFENDANT'S MOTION TO DISMISS

In 1985 Mexico City, a Believer named Heinrich Treadway is involved in a car chase with Nihilists, including a man named Bathurst, who are after him because he has acquired their superweapon, "the Egg." He is aided by fellow Believers Abel and Leona. Treadway drives off a bridge, using his abilities to jump from his car in mid-air and escape onto a crane 150 feet away. Bathurst then captures Abel's soul using a "Dethroner," a special gun that (it is later revealed) has the power to steal an Infinite's consciousness and prevent them from reincarnating.

In present-day New York City, Evan McCauley applies for a job at a restaurant, but because of his history of institutionalization and violent behavior, he is rejected. 7:45-11:15. In order to pay his rent, and buy his medication, Evan forges a katana for a drug dealer, even though he does not recall ever having been trained as a blacksmith. 11:15-13:21. After the deal goes south, Evan is arrested, and other Infinites deduce that he is the reincarnated Treadway. 18:22-19:07. A man at the police station introduces himself to Evan as Bathurst, claiming they have known each other for centuries. 19:08-24:55. Bathurst attempts to trigger Evan's memories of his prior incarnations by showing his possessions from those past lives.

Eventually, Evan experiences a flash of a memory from a past life, but just then, another Infinite, Nora (the reincarnated Leona) drives through the jail wall and helps Evan escape. Nora explains that Evan is not a schizophrenic, but is an Infinite, and tells him of the conflict between Nihilists like Bathurst, who want the world to end, and Believers, who want to use their powers to help mankind.

Nora takes Evan to the "Hub," the Believers' headquarters embedded in a remote mountain, where the Believers conduct research and train to fight the Nihilists. 33:48-37:20. Evan meets other Believers and learns that Bathurst, desperate to stop endlessly reincarnating, had commissioned the creation of the Egg, which has the power to kill every living thing on earth, thus stopping the cycle of reincarnation. 38:26-41:20. As Treadway, Evan had stolen the Egg, and Bathurst is trying to capture Evan to find out where he hid it. 41:20-41:50.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079                                        3                    DEFENDANT'S MOTION TO DISMISS

At the Hub, Evan learns that his predecessor, Treadway, was able to manipulate energy.  41:50-46:42.  Evan struggles to regain Treadway's memories.  52:52-54:22.  Evan and other Infinites visit the hideout of a hedonistic Infinite, The Artisan.  58:07-1:09:12.  The Artisan restores Evan's memories by using a machine that drowns Evan, temporarily stopping his heart.  The machine "reboots" his mind and Evan remembers that, before he died, Treadway hid the Egg inside his stomach.

Bathurst, who has infiltrated the Hub, overhears this, locates Treadway's body, and finds the Egg hidden inside.  1:09:01-1:15:05.  The Believers fight their way into Bathurst's castle, but Bathurst escapes on a plane with the Egg.  1:16:40-1:25:32.  Evan is able to jump a motorcycle onto the plane and, regaining Treadway's ability to manipulate energy, is able to walk across the plane's surface as it flies.  Evan enters the plane, fights with Bathurst, but the armed Egg falls out of the plane.  Evan jumps out after it and attempts to deactivate the Egg in midair; Bathurst jumps out after him and they battle as they plummet.  Evan is able to disarm the Egg and "Dethrones" Bathurst before Evan crashes into the ocean and dies.  1:26:10-1:33:19.

Nora and The Artisan are able to free the souls of all the trapped Believers stored in Bathurst's castle, but Nora dies.  1:33:20-1:34:26.  Years later, Evan is reborn in Indonesia.  The Artisan visits and offers Evan's katana to the "new" Evan, who then regains his memories.  1:35:50-1:37:44.

**The Reincarnationist Papers**:  *Infinite* is based on the novel *The Reincarnationist Papers* ("*TRP*") by D. Eric Maikranz.  *See id* at 1:37:56; *see also* Compl. ¶69.  The protagonist of *TRP* is Evan Michaels, a professional arsonist.  *See* Notice of Lodging Ex. B.  As in *Infinite,* Evan is pursued by the police in the opening scene.  He is shot in the foot and takes refuge in what he thinks is a church, where he encounters a woman named Poppy.  Evan tells Poppy that he remembers a prior life in which he died, as a boy, in a house fire.  Poppy reveals that she is a member of the Cognomina, a group of people that remember their past lives.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

4

DEFENDANT'S MOTION TO DISMISS

According to the Cognomina, although everyone reincarnates, only a few are able to remember their past lives.

Poppy brings Evan to the group's headquarters, where he learns about reincarnation. Evan endures a multi-day inquisition about his past lives and memories. This process is called "The Ascension" – if he passes, he will be part of the group. If not, he will be killed. Poppy is Evan's "sponsor" for the Ascension. Evan completes the inquisition and is officially inducted into the Cognomina.

While some of the story points from *TRP* differ from *Infinite*, this underlying work contains the concept of a male protagonist who does not realize he is capable of reincarnation, but who is inducted into a group of Reincarnationists, who teach him about their powers and about their secret society.

## B.     Plaintiff's *The Link*.

Plaintiff's *The Link* follows a famous astrologer, Sydney Tobias.  *See* Compl. Ex. 10.  Sydney is conducting a "reading" for a billionaire client when Sydney is informed that his father, Horace, is in the hospital.  *Id.* at 9-13.  At the hospital, Horace reveals to Sydney that they have known each other in past lives, and that Horace is not actually Sydney's "father."  Horace has been Sydney's protégé, "Luke," in many of their past lives.  *Id.* at 17-21.  Horace says a prayer that allows Sydney to begin recalling these past lives.  *Id.* 35.

Sydney remembers his first meeting with Horace/Luke, shortly before the birth of Jesus Christ.  *Id.* at 39.  Horace/Luke and Sydney (then named Elijah) encountered the three wise men from the Bible, and spent time travelling in their company.  *Id.* at 44-47.  One of the wise men, Anaxagoros, eventually teaches Luke and Elijah about reincarnation in Alexandria.  *Id.* at 48-60.  They later met an oracle in Delphi, "Mother Gaea," Elijah's love interest.  *Id.* at 61-64.

Sydney/Elijah and Horace/Luke, throughout each of their incarnations, have been searching for the reincarnated version of Jesus.  *Id.* at 67-70.  There is also an

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

5

DEFENDANT'S MOTION TO DISMISS

adversary – the Biblical figure of Judas Iscariot – who, for the last 2000 years, has been trying to stop the astrologer (while also seeking to eradicate the Jews).

Back in the present day, Sydney and Horace are pursued by gunmen. *Id.* at 71-73. Horace believes that a man named Nicholas, their "old nemesis" (the reincarnated Judas) is responsible. *Id.* at 73. While Sydney attempts to flee, Horace is shot and killed. *Id.* at 73-77. Sydney then remembers a past life, around 1093 C.E., when he was imprisoned and tortured by Nicholas at a Vatican prison. *Id.* at 87-94. Nicholas, an official in the Catholic church, had Sydney burned at the stake along with Lucia, a woman who reveals that she is the reincarnated Mother Gaea. *Id.* at 114-117.

Sydney then travels to San Diego, to the home of a psychic named Lilith. *Id.* at 133. Sydney realizes that he is being hunted by an evil librarian, Judy Orman, who is the current incarnation of Judas. *Id.* at 147-153. Judy is planning a terrorist attack on New York and Washington. *Id.* at 174-181.

Ultimately, in 2001, using his astrological predictions, Sydney locates an 11-year old virgin-born boy from Alabama. *Id.* at 265-293. At the end of the book, this child-Jesus ("Charlie") attends a Manhattan religious service attended by Christians and Hare Krishna followers. *Id.* at 294-300. Charlie/Jesus gathers the spirits of soldiers from various 1990s military conflicts (Iraq/Bosnia) and saves their souls.

Shortly after the service, planes overhead crash into the twin towers. *Id.* at 305. Charlie/Jesus meets and comforts Judy/Nicholas/Judas. *Id.* at 303-305. Judas finally realizes that he had been misguided for thousands of years, and that Jesus did not support Judas' quest to eradicate the Jewish people.

## III. ARGUMENT

### A. Plaintiff Fails to Plausibly Allege Defendants' Access to The Link.

To prevail on a claim of copyright infringement, a plaintiff must prove both that (i) the defendant actually copied plaintiff's work, and (ii) that such copying was "unlawful." *Rentmeester v. Nike, Inc.*, 883 F.3d 1111, 1117 (9th Cir. 2018). A

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

6

DEFENDANT'S MOTION TO DISMISS

plaintiff can attempt to prove actual copying "by showing that the defendant had **access** to the plaintiff's work **and** that the two works share similarities probative of copying." *Id.* at 1124 (emphasis added). "[C]ircumstantial evidence can be used to prove access either by (1) establishing a chain of events linking the plaintiff's work and the defendant's access, or (2) showing that the plaintiff's work has been widely disseminated." *Art Attacks Ink, LLC v. MGA Enter, Inc.*, 581 F.3d 1138, 1143 (9th Cir. 2009). "Access may not be inferred through mere speculation or conjecture. There must be a reasonable possibility of viewing the plaintiff's work - not a bare possibility." *Three Boys Music Corp. v. Bolton*, 212 F.3d 477, 482 (9th Cir. 2000).

**Plaintiff Fails To Allege Widespread Dissemination**: In support of his theory of access, Plaintiff alleges that *The Link* is "accessible online as a 5-Star at Amazon.com for 15 years up to *Infinite's* public release in 2021." Compl. ¶14. However, Plaintiff has failed to allege any facts suggesting that *The Link* should be considered "widely disseminated." "In most cases, the evidence of widespread dissemination centers on the degree of a work's commercial success[.]" *Loomis v. Cornish*, 836 F.3d 991, 997 (9th Cir. 2016). Courts have held that a work **was not widely disseminated** where as many as 17,000 copies were sold. *Rice v. Fox Broad Co.*, 330 F.3d 1170, 1178 (9th Cir. 2003); *see also Jason v. Fonda*, 526 F. Supp. 774, 776 (C.D. Cal. 1981) (no access when several hundred copies sold).

Here, Plaintiff does not allege how many copies of *The Link* have been sold; instead, he alleges that the availability of the work on Amazon.com is sufficient to show widespread dissemination.[2] However, the mere availability of the work on the internet is insufficient, by itself, to plausibly allege widespread dissemination. *Whitehead v. Netflix, Inc.*, No. 22-cv-04049-CRB, 2022 U.S. Dist. LEXIS 215901, at *31-34 (N.D. Cal. Nov. 30, 2022) (self-publishing book on Amazon was

---

[2] To the extent that Plaintiff alleges the "5-Star" rating of the book is in any way probative of access, *see* Compl. ¶14, it is worth noting that *The Link* has a total of five global reviews. *See* Grossman Decl. Ex. C.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

7

DEFENDANT'S MOTION TO DISMISS

insufficient to show widespread dissemination); *Lois v. Levin*, No. 2:22-cv-00926-SVW-ADS, 2022 U.S. Dist. LEXIS 168358, at *7 (C.D. Cal. Sept. 16, 2022) (availability of work on multiple online platforms was insufficient to show widespread dissemination); *Griffin v. Peele*, No. EDCV 17-01153 JGB (KKx), 2018 U.S. Dist. LEXIS 226086, at *16 (C.D. Cal. Jan. 18, 2018) (mere availability of plaintiff's work on Amazon was insufficient to show widespread dissemination).

Plaintiff has clearly failed to allege access via widespread dissemination.[3]

***Plaintiff Fails To Plaubily Allege Access Via Chain of Events***: Plaintiff also asserts that he gave a copy of *The Link* to unspecified Paramount "staff" when he worked on a production of *Cirque Du Soleil: Worlds Away 3D* ("Worlds Away") in 2011. Compl. ¶7. Paramount was not involved in the production of Worlds Away – as the Blu-Ray cover that Plaintiff cites indicates, that film was "a Cirque du Soleil Production." *Id*.[4] But even accepting Plaintiff's allegations as true for purposes of this motion, at most Plaintiff has alleged "'bare corporate receipt' of [his] work by an individual who shares a common employer with the alleged copier," which does not suffice to establish access. *Loomis*, 836 F.3d at 995; *see also, e.g., Bernal v. Paradigm Talent & Literary Agency*, 788 F. Supp.2d 1043, 1056 (C.D. Cal. 2010) (collecting cases).

Rather, to establish access via chain of events, "a plaintiff must show that he submitted his work to an intermediary who is in a position to transmit the plaintiff's work to the creators of the infringing work." *Bernal*, 788 F. Supp.2d at 1056. "At a minimum…the dealings between the plaintiff and the intermediary and between the

---

[3] *Gray v. Perry*, No. 2:15-cv-05642-CAS (JCx), 2018 U.S. Dist. LEXIS 138263 (C.D. Cal. Aug. 13, 2018), cited by Plaintiff, does not invalidate the above precedents. Compl. ¶ 21. In *Gray*, the court merely held that a triable issue on access existed where plaintiff's song had "achieved critical success, including a Grammy nomination," and had been viewed "**millions of times** on YouTube and Myspace." *Id.* at *12 (emphasis added). It did not remotely suggest that a work's mere availability on the Internet is sufficient to plead access.

[4] Paramount acquired distribution rights from Cirque du Soleil Burlesco, LLC well after Plaintiff allegedly worked on the production.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

8

DEFENDANT'S MOTION TO DISMISS

intermediary and the alleged copier must involve some overlap in subject matter to permit an inference of access." *Id.*

Here, Plaintiff has not alleged the identity of **any** of the purported Paramount staff to whom he gave a copy of *The Link*. Further, Plaintiff has not alleged that any of the unnamed recipients had any connection to the creation of *Infinite*. Plaintiff's allegations are based on speculation and conjecture, and are legally insufficient to plead access. *See Washington v. ViacomCBS, Inc.*, No. CV 20-435 CBM (PJWx), 2021 U.S. Dist. LEXIS 104820, at *5 (C.D. Cal. May 21, 2021) (allegation that plaintiff submitted her work to producers allegedly employed by CBS failed to present a plausible theory that CBS accessed her work); *Griffin*, 2018 U.S. Dist. LEXIS 226086, *14 (granting dismissal where alleged chain of events was "too speculative and support nothing more than a bare possibility of access."); *Panton v. Strong*, 2018 WL 5099666, at *3 (C.D. Cal. Mar. 14, 2018) (granting dismissal where speculative allegations failed to plead an adequate nexus between the alleged intermediary and the creation of defendant's work).

As a matter of law, Plaintiff has failed to demonstrate a plausible theory of access, and his claim must be dismissed.

**B.    The Works Are Not Substantially Similar.**

    **1.    To State a Claim, Plaintiff Must Demonstrate "Substantial Similarity" Between the Works' Protected Elements.**

Even where (unlike here) the plaintiff shows the defendant **actually copied** his work, the plaintiff must demonstrate that the copying in question is **unlawful** because the defendant copies "enough of the plaintiff's [protected] **expression** of those ideas or concepts to render the two works **'substantially similar'**" in their "**protected elements**." *Rentmeester*, 883 F.3d at 1117 (emphasis added).

On a motion to dismiss, courts apply the "extrinsic test" to determine if substantial similarity exists. *Kouf v. Walt Disney Pictures & Television*, 16 F.3d 1042, 1045 (9th Cir. 1994). The extrinsic test evaluates the "articulable similarities

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

9

DEFENDANT'S MOTION TO DISMISS

between the plot, themes, dialogue, mood, setting, pace, characters and sequence of events." *Funky Films v. Time Warner Entm't Co., L.P.*, 462 F.3d 1072, 1077 (9th Cir. 2006). In applying the extrinsic test, the "court compares, not the basic plot ideas for stories, but the actual concrete elements that make up the total sequence of events and the relationships between the major characters." *Id*.

"General plot ideas are not protected by copyright law," and cannot give rise to an infringement claim. *Berkic v. Crichton*, 761 F.2d 1289, 1293 (9th Cir. 1985). Similarly, "*[s]cenes-à-faire*, or situations and incidents that flow necessarily or naturally from a basic plot premise, cannot sustain a finding of infringement;" nor can "[f]amiliar stock scenes and themes that are staples of literature ...." *Cavalier v. Random House, Inc.*, 297 F.3d 815, 823 (9th Cir. 2002). Thus, as the Ninth Circuit has emphasized, the Court "must take care to inquire only whether the **protectable elements, standing alone**, are substantially similar" and thus must "filter out and disregard the non-protectable elements" – including shared ideas, concepts, and *scenes-à-faire* – when considering substantial similarity. *Cavalier*, 297 F.3d at 822) (emphasis in original); *see also, e.g., Rentmeester*, 883 F.3d at 1118.

### 2.    The Court Can Compare the Works and Determine Lack of Substantial Similarity on a Motion to Dismiss.

"[T]he Ninth Circuit has [long] noted that...'when a copyrighted work and the alleged infringement are both before the court, capable of examination and comparison, non-infringement can be determined on a motion to dismiss.'" *Zella v. E.W. Scripps Co.*, 529 F. Supp.2d 1124, 1130 (C.D. Cal. 2007); *see Rentmeester*, 883 F.3d at 1123 (affirming dismissal where "[n]othing disclosed during discovery could alter the fact that the allegedly infringing works are as a matter of law not substantially similar . . . "); *see also Masterson v. Walt Disney Co.*, 821 F. App'x 779, 780 & n.1 (9th Cir. 2020) (collecting cases, and affirming dismissal of infringement claim); *see also Carlini v. Paramount Pictures Corp.*, No. 21-55213, 2022 U.S. App. LEXIS 5480, *3-6 (9th Cir. Mar. 2, 2022) (affirming dismissal of

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079                                           10                    DEFENDANT'S MOTION TO DISMISS

infringement case based on comparison of works).  In conducting this review, "the works themselves supersede and control [any] contrary descriptions of them … contained in the pleadings."  *Peter F. Gaito Architecture, LLC v. Simone Dev. Corp.*, 602 F.3d 57, 64 (2d Cir. 2010); *see also Silas v. HBO, Inc.*, 201 F. Supp.3d 1158, 1173 (C.D. Cal. 2016).

### 3.    The Protectable Elements of the Works Are Not Similar.

*Plot and Sequence of Events:*  As explained above, concepts and general plot ideas are not protectable and, therefore must be "filtered" out from the Court's analysis of whether two works are substantially similar.  Here, as a threshold matter, the concept of a story about characters who reincarnate over the course of thousands of years and remember their past lives is not protectable.[5]  *See, e.g., Funky Films*, 462 F.3d at 1077-78 (no similarity between two works based on death of family patriarch who leaves two sons to run family funeral home, both of which involve return of one son to hometown to help in the business, another son changing his religion to aid in the business, and competitor bidding on the business).

Similarly, any ideas that naturally flow from the concept of reincarnation – such as characters being drawn together in multiple lives, grappling with the moral consequences of reincarnation, or being able to draw on the accumulated knowledge of their past lives – constitute *scènes-à-faire* and are not protectable.  For example, in *Fillmore v. Blumhouse Prods., LLC*, No. 2:16-cv-04348-AB-SS, 2017 U.S. Dist. LEXIS 211021 (C.D. Cal. July 7, 2017), the court examined two works involving a "Lazarus" character and the concept of scientific reanimation.  The court held that shared concepts of death and reanimation "can be said to 'necessarily flow' from the term 'Lazarus' and the connotations that accompany it…[and] are not a basis for establishing extrinsic similarity."  *Id.* at *23-24.  So, too, here, the elements which necessarily flow from the concept of reincarnation are not protectable.

---

[5] Plaintiff concedes that this concept has been included in hundreds of works. Compl. ¶¶117-120.

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

11

DEFENDANT'S MOTION TO DISMISS

Accordingly, it is well-settled that even where two works "share the same basic plot premise" – which is not the case here – that does not support an infringement claim where (as here) "a closer inspection reveals that they tell very different stories." *Benay v. Warner Bros. Entm't, Inc.*, 607 F.3d 620, 625 (9th Cir. 2010). Here, shorn of the unprotectible idea of a good vs. evil reincarnation story and *scènes à faire* flowing therefrom, the plots of *Infinite* and *The Link* are entirely dissimilar. *Infinite* is about Evan McCauley, a man mistakenly diagnosed with schizophrenia, who is captured by police and rescued by a woman who reveals that she is part of a secret society of Infinites who remembers their past lives. The plot centers on a device created by the Nihilist's leader, Bathurst, called the Egg, which was created to destroy all life on Earth and stop the cycle of reincarnation. With the aid of other Believers, Evan remembers where he hid the Egg in a past life, and is able to regain his ability to manipulate energy; he uses this power to stop Bathurst from detonating the Egg, and to trap Bathurst's soul in a computer chip so that he cannot reincarnate. The film ends with Evan, reincarnated this time as a boy in Indonesia, easily regaining his past life memories.

By contrast, the protagonist of *The Link*, Sydney Tobias, is a famed astrologer and novelist. *The Link* features religious references, imagery and Biblical characters and (unlike *Infinite*) includes extended flashbacks to Sydney's past lives in different eras (e.g., at the birth of Christ, the library of Alexandria, with Nostradamus in France in the 1500s, and in post-WWII Germany and South America). Sydney's goal throughout all of these eras is to find the reincarnation of Jesus Christ through the use of astrological predictions. The novel culminates in Sydney finally locating Jesus's reincarnation as an 11-year old boy from Alabama. Sydney and Jesus attend a spiritual ceremony where Jesus frees the souls of dead soldiers. The antagonist of the novel is Judas, who has spent the last two millennia attempting to eradicate the Jewish people. Judas believed he was following the teachings of Jesus by trying to

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

12

DEFENDANT'S MOTION TO DISMISS

exterminate the Jewish people, but after meeting Jesus/Charlie, Judas learns that he was wrong.

Despite the vast differences between the works, Plaintiff proffers a list of purported "similarities" as Exhibit 11 to the Complaint.  Courts disregard such lists of cherry-picked lists of "random similarities scattered throughout the works." *Litchfield v. Spielberg*, 736 F.2d 1352, 1356 (9th Cir. 1984) ("such lists of similarities…are inherently subjective and unreliable."); *see also, e.g., Kouf*, 16 F.3d at 1045-46 (same); *Gable*, 727 F. Supp. 2d at 841 (plaintiff's list, "made up of random similarities that have no qualitative significance to the works," was not "probative of similarity.").

Further, the Court's review of the works will reveal that Plaintiff's alleged "similarities" either consist of unprotectible stock elements and *scènes à faire*, and/or blatantly mischaracterize the works.  For example, Plaintiff claims as a similarity that both protagonists "had two different professions," Compl. Ex. 11 at 5, no. 11, but Evan has **no** job in *Infinite* – he is unable to obtain gainful employment due to his perceived schizophrenia and is reduced to creating weapons for a drug dealer (using his ancient knowledge) in exchange for medication.  This does not remotely resemble Sydney's professions, in *The Link*, as a renowned astrologer and author.  Further, Plaintiff's own list shows that, in each work, the purported similarities are expressed differently: for example, Plaintiff compares an "interrogation" scene in *The Link* where the protagonist is being tortured in a Vatican prison in 1093, to an "interrogation" scene in *Infinite* where Bathurst meets Evan in a police interrogation room in present-day New York.  *Id.* at 7, no. 16. Plaintiff's list of purported similarities does not support a finding of any similarity of expression.

Courts in this Circuit have **repeatedly** rejected infringement claims based on far more conceptual similarities than those at issue here.  For example, in *Benay*, the Ninth Circuit found no protectible similarity between the film The *Last Samurai* and

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations
239555273
202830-10079
13
DEFENDANT'S MOTION TO DISMISS

plaintiff's work of the **<u>exact same title</u>**, even though both works "share[d] the historically unfounded premise of an American war veteran going to Japan to help the Imperial Army by training it in the methods of modern Western warfare for its fight against a samurai uprising[.]" 607 F.3d at 625.  The Ninth Circuit recognized that any similarities "flow[ed] naturally from the works' shared basic [and unprotectible] plot premise," and concluded that, "[s]tripped of these unprotectible elements, the works are not sufficiently similar to satisfy the extrinsic test."  *Id.*  As in this (and many other) cases, the works at issue here tell "fundamentally different stories," even if they "share [a somewhat similar] premise and … elements that flow naturally from that premise."  *Id.* at 626; *see also Shame on You Prods. v. Banks*, 120 F. Supp. 3d 1123, 1151-53 (C.D. Cal. 2015), *aff'd* 690 F. App'x 519 (2017) (dismissing case where "many of the purported similarities … flow directly from the basic premise of a walk of shame…").

  **Characters**:  To be deemed protectible, characters must be "especially distinctive" and "contain some unique elements of expression."  *DC Comics v. Towle*, 802 F.3d 1012, 1021 (9th Cir. 2015).  Nor are "traits that flow naturally from the works' shared premises" protectible.  *Benay*, 607 F.3d at 626.  "When analyzing whether two protectible characters are substantially similar, courts require a very high degree of similarity between characters."  *Silas*, 201 F. Supp.3d at 1177.

  Contrary to Plaintiff's allegations, there is no similarity between the works' main characters, *The Link*'s Sydney (a famous astrologer and author, who is featured on talk shows, has billionaire clients, and for whom astrology is core to his identity) and *Infinite*'s Evan (a man diagnosed with schizophrenia who cannot hold down a job, with no connection to astrology, and who eventually regains his past-life skills as a talented warrior, with the power to manipulate matter).  The only conceivable "similarity" is that they both discover the ability to recall their past lives; again, this unprotectible premise cannot support an infringement claim.

  Plaintiff nevertheless alleges that the protagonist in each work is "male,"

"unmarried," "childless," "adopted," "having two professions," and are "heroes lacking reincarnation recall."  Compl. ¶126.  The fact that both protagonists are "male," "unmarried," "childless" and "adopted" are clearly not "especially distinctive" (and thus not protectable) character traits.  Moreover, while both protagonists may be "unmarried," in *The Link* Sydney has a romantic relationship with Lilith/Lucia; but Evan does not have any romantic relationship.  And, as explained above, Evan does not have "two professions."

Further, Evan and Sydney's paths to past-life recall are entirely different. Sydney recalls his past lives immediately upon the first incantation recited by Horace.  By contrast, Evan spends much of the film attempting to recall his past lives; Evan must actually die and come back in order to achieve recall.  Once he is able to remember, he gains supernatural abilities not present in *The Link*.

Plaintiff also alleges that *Infinite*'s Nora is similar to both Sydney and Lilith in *The Link*.  Setting aside that attempting to establish a similarity through an amalgamation of characters is impermissible, *see Rose v. Connelly*, 38 F. Supp. 54, 56 (S.D.N.Y. 1941), Nora does not remotely resemble *either* Sydney or Lilith. Nora, the first Infinite that Evan meets, is young, attractive, and a gifted fighter.  Her role in *Infinite* is mainly to teach both Evan and the viewer about reincarnation and the conflict between Nihilists and Believers.  She is not an astrologer, nor particularly religious or spiritual, and does not remotely resemble Sydney, the protagonist of *The Link*.  Nor does she resemble the character of Lilith, who appears in multiple guises, first as a Greek oracle named "Mother Gaea."  Lilith is never depicted as a fighter; further, unlike Nora, Lilith does not (and does not want to) recall her past lives.  Instead, her defining characteristic in each life is her power of prescience (which Nora does not have).  Any "similarity" stems from the unprotectible premise of characters who can remember their past lives.

Finally, Plaintiff also attempts to find similarities between the antagonists in each work, Bathurst in *Infinite* and Nicholas/Judas in *The Link*.  Specifically,

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

15

DEFENDANT'S MOTION TO DISMISS

Plaintiff alleges that both villains speak Latin and are "bent on worldly genocide." But the fact that two characters speak the world's most famous classical language flows naturally from the unprotectible premise of characters who have reincarnated since ancient times.  And while the two characters are both villains, they are distinct in all measures of protectable expression.  In *Infinite,* Bathurst is bent on destroying all life in the universe because he experiences reincarnation as a never-ending torture.  In *The Link*, the villain is the reincarnation of Judas, who seeks the eradication of the Jewish people (believing that this is what Jesus would have wanted).  In furtherance of this goal he, *inter alia*, incites the Holocaust.  The fact that both villains engage in acts of violence – for completely different reasons – does not support a finding of similarity of protected expression.  *Fillmore,* No. 2017 U.S. Dist. LEXIS 211021, at *26 (fact that both villains "(1) engage in an indiscriminate killing spree and (2) are . . . adversely affected by reanimation" was "not distinctive enough to be properly considered protectable expression.").

**Setting:**   *The Link* takes place over millennia: in biblical times, in Ancient Greece and Egypt, in the Vatican in 1093, in 1500s France, and then in Florida, San Diego, Mississippi, Alabama and finally New York on 9/11.  By contrast, *Infinite* begins with one flashback in 1980s Mexico City, and then proceeds chronologically in the present day.  Evan's story begins in New York City, but then largely takes place at the Believers' headquarters, before moving to London.  Though both works include some scenes set in New York City, *Infinite* begins in 2020s New York and *The Link* ends in New York on 9/11.  *See DuMond v. Reilly*, No. CV 19-8922-GW-AGRx, 2021 U.S. Dist. LEXIS 37241, *55-56 (C.D. Cal. Jan. 14, 2021) (both works' setting in large American cities did not weigh in favor of finding substantial similarity.). Accordingly, the settings of the works are not similar.

**Dialogue:**   There is no "extended similarity in dialogue" in the two works, as is required to establish substantial similarity.  *Shame on You Prods.*, 120 F. Supp. 3d at 1156; *see also Olson v. NBC*, 855 F.2d 1446, 1450 (9th Cir. 1988).  Plaintiff's

Loeb & Loeb
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079

16

DEFENDANT'S MOTION TO DISMISS

attempt to cherry-pick isolated words or phrases fails to establish the requisite similarity.  For example, Plaintiff claims that the works are similar because, in each, the antagonist refers to the protagonist as "old friend."  Use of this term to describe a person with whom one is reunited is obvious.  *See Shame on You Prods*, 120 F. Supp. 3d at 1156 ("[P]hrases…conveying an idea typically expressed in a limited number of stereotyped fashions" are unprotectible).  Similarities in "short excerpts of dialogue… do not rise to the level of substantial similarity."  *Cline v. Reetz-Laiolo*, 329 F. Supp.3d 1000, 1040 (N.D. Cal. 2018).

## IV.    CONCLUSION

Defendant requests that Plaintiff's Complaint be dismissed.


Dated:  October 17, 2024                    LOEB & LOEB LLP


By: ____*/s/ David Grossman*_____
David Grossman
Attorneys for Defendant
PARAMOUNT PICTURES
CORPORATION

1

## <u>CERTIFICATE OF COMPLIANCE</u>

2

The undersigned, counsel of record for Defendant Paramount Pictures

3

Corporation, certifies that this brief contains 5596 words, which complies with the

4

word limit set by Local Rule 11-6.1 and this Court's Standing Order dated May

5

2023.

6

7

Dated:  October 17, 2024              LOEB & LOEB LLP

8

9                                               By:    /s/ David Grossman

10                                                      David Grossman
                                                        Attorneys for Defendant
11                                                      PARAMOUNT PICTURES
                                                        CORPORATION

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**Loeb & Loeb**
A Limited Liability Partnership
Including Professional
Corporations

239555273
202830-10079                                  18                    DEFENDANT'S MOTION TO DISMISS