# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| BAYARDO RENO SANDY, | Case No.: 2:24-cv-04403-RKG-RAOx |
| Plaintiff, | |
| vs. | PLAINTIFFS' NOTICE OF MOTION |
| PARAMOUNT PICTURES | AND MOTION TO STRIKE |
| CORPORATION, | DEFENDANT'S MOTION TO |
| Defendant | DISMISS FOR VIOLATION(s) OF |
| | COURT ORDER ECF-15; |
| | Fed.R.Civ.P. 4(e)(3), and |
| | Fed.R.Civ.P. 12(f) |
| | |
| | *[Filed with :Declaration of Plaintiff Bayardo Sandy; and [Proposed] Order]* |
| | |
| | *Oral Argument Not Requested* |

**TO DEFENDANT AND ITS ATTORNEY OF RECORD:**

1.   PLEASE TAKE NOTICE that on the Court's discretion may be set for a hearing or *sua sponte* may be set for this motion response to be submitted in writing. Plaintiff is *Pro-Se* litigant and resides in Colorado, making it difficult to attend hearings in person between work scheduling and long distance. Consequently, a written format <u>shall not injure Defendant's defense ability to dispute all the evidence already submitted on the public docket for this case.</u> Plaintiff will and hereby does move this Court for an order striking *Motion to Dismiss* as *ECF-16* for two main reasons:

A) Failure to adhere with Court's Order on ECF.No. 15;

B) <u>New Edits</u> submitted on its *Motion to Dismiss (ECF.No. 16)* are in violation of the 60 days prescribed in Fed.R.Civ.P. 4(e)(3).

2.   Pursuant to Fed.R.Civ.P. 12(f), Plaintiff respectfully moves this *Motion* on the grounds that all inculpatory evidence is already submitted in the docket.  Defendant's actions under ECF.No. 16 qualify as "abuse of process" for misusing the procedural law and violating Plaintiff's rights under the XIV Amendment granted to him as a United States citizen.

3.   Although motions to strike are disfavored, in this case, it is appropriate if the pleading violates specific rules of Court, for instance, exceeding page limits or improper formatting.  This *motion* will point out evidence (already on the docket) that the insubordinate "new edits" submitted under ECF.No. 16. These "edits" were a willful intend to hide unqualified remarks and false statements provided to the Court in Paramount's *Motion to Dismiss* filed under ECF.No. 13.

4.   Further, unqualified remarks and false statements on the record to the Court is tantamount to obstruction of justice, lacking *candor toward the tribunal,* and lacking *fairness toward the opposing party.*

5.   This Motion will show that the "new edits" in ECF.No. 16 qualify as *mens rea;* and (Paramount's or) Defendant-Esquire's guilty mind used the Order ECF.No. 15 as an opportunity to delete false statements offered to the Court.

6.   Pursuant to L. R. 7–3, this Motion is made following the exchange of emails and letters of counsel which commenced on 10/18/2024 and continued for almost about 100 minutes over the phone on 10/21/2024.  Declaration of Plaintiff Bayardo Sandy, ¶¶-10–19 as highlights part of the 10/21/2024-phonecall.

Date and location: Redstone, CO, on October 27, 2024

By:___ */s/ Bayardo Reno Sandy*

*SANDY V. PARAMOUNT (Motion to Strike) Page - 2*

Bayardo Reno Sandy

*Plaintiff Pro-Se*

# Table of Contents

TABLE OF AUTHORITIES..............................................................................3

I. INTRODUCTION......................................................................................6

II. THE COVER UP OF MISDEED FOUND ON ECF.No. 13...............................7

III. LIST OF STATUTORY VIOLATIONS ALLEGED ABOVE.........................12

IV. LEGAL STANDARD..............................................................................13

V. BACKGROUND....................................................................................17

VI. ANOTHER LEGAL STANDARD TO STRIKE EFC.NO. 16.........................19

VII. SUMMARY OF THIS MOTION............................................................23

VIII. CONCLUSION..................................................................................25

CERTIFICATE OF COMPLIANCE...............................................................26

# TABLE OF AUTHORITIES

## Cases or Precedents

Gray v. Hudson 2:15-cv05642-CAS (JCx) Doc.No. 299, Page-8.......................23

Link v. Wabash Railroad Co., 370 U.S. 626 (1962)............................................17

Yonays v. Paramount Case 2:22-cv-03846-PA-GJS Document 82-1 Filed 12/03/23................................................................................................18

## Statutes and Local Rules

18 U.S. Code § 1001(a)(2)................................................................12, 15, 24

18 U.S. Code § 1519........................................................................13, 15, 24

California Rules of Prof. Conduct 3.3.............................................12, 24

California Rules of Prof. Conduct 3.4.............................................12, 24

Fed.R.Civ.P. 12(f)..................................................................................25

Fed.R.Civ.P. 4(e)(3)..................................................................................6

Fed.R.Civ.P. 41(b).........................................................................15, 25

Fed.R.Civ.P. 55(a)............................................................................6, 21

Fed.R.Civ.P. 8(b)..............................................................................6, 21

L. R. 7–3................................................................................2, 14, 24

L.R. 11–3.6.....................................................................................12, 23

L.R. 11–6.2;.............................................................................................12

L.R. 15-2.....................................................................................12, 14, 24

L.R. 83-7(b)...................................................................................12, 24

L.R. 83-7(c)....................................................................................12, 24

## Other Legal Authorities

Court Order ECF.No. 15............................................3, 5, **11,** 12, 13, 14

# I. INTRODUCTION

7.   There is an old saying; *Vēritās līberābit vōs[1]*," is commonly known in English, *"The truth shall set you free*; however, (from the start of this trial), "truth" it is not the impetuous actions displayed by Defendant Paramount Pictures Corporation ("Paramount") via its Esquire from the start of this lawsuit. Consequently, it appears that Paramount is feeling the need to insubordinate or violate Court Order ECF.No. 15 and Fed.R.Civ.P. 4(e)(3) as well.

8.   It is very unlikely that such insubordinate actions already on record would be necessary if Plaintiff's copyright infringement claims were not meritorious.

9.   While Plaintiff was preparing his Answer to *Motion to Dismiss* [ECF.No. 13] and his Application for Entry for Default [under Fed.R.Civ.P 55(b) and alternatively Fed.R.Civ.P. 8(b) to be filed in tandem because Paramount failed to address a plethora of claims made against it; the Plaintiff was astonished with the violation mentioned supra giving rise and just cause for this *Motion to Strike.*

10. Paramount is a multi-billion dollar corporation that did not hire neophytes before this Court.  Paramount via its counsels under Fed.R.Civ.P. 4(e) (3) was limited to 60 days to file its *Response* or its *Motion to Dismiss* against claims made against Paramount.

11. Paramount's actions obviously disadvantaged Plaintiff's procedural rights protected by the U.S. Constitution, if Paramount's swagger or hubris remain undisciplined and continue to act above the Court Order ECF.No. 15 and Fed.R.Civ.P. 4(e)(3); then Paramount has the advantage to dictate to the Court. Therefore, Paramount is not treating this case as a federal trial; but treating this case as an inconsequential pageantry.

---

1: Latin version the abbreviated quote of the Bible found under *John 8:32.*

## II. THE COVER UP OF MISDEED FOUND ON ECF.No. 13

**The False Statements offered to the Court:**

12. Defendant Paramount offered false statements to the Court through its footnote-7 *(see ECF.No. 13, Pg.ID #:695)*, and these false statements were deleted and refiled as ECF.No. 16.  The footnote #7 (ECF.No. 13) reads:

> [Footnote] 7 *Plaintiff argues that similarities between the cover art for the The Link and Infinite should be taken as proof of substantial similarity. Compl. ¶¶47-59. <u>The cover of The Link shows the author standing between an Egyptian pyramid and the Twin Towers.</u> Id. ¶55. <u>Infinite's cover art depicts the character of Evan between a mountain peak (the location of the Hub) and an entirely different New York cityscape</u> (where Evan lives). Even if the cover art of both works was relevant to a substantial similarity analysis – it is not – Infinite's cover art is not "substantially similar" to The Link, as it does not depict a pyramid or the Twin Towers.*

13. There is a series of false assertions together in this cited footnote, which was deleted from ECF.No. 16.

14. This photo was submitted with Complaint's Paragraph 51.  Plaintiff describes the whole dust-jacket from Complaint's ¶-48 through ¶-56.



**A) The First (compound) False Statement:**

15. Paramount wrote: "*The cover of The Link shows the author standing between an Egyptian pyramid and the Twin Towers.*"

16. This part of the statement is false, for two reasons: firstly, the picture provided in Paragraph 51 shows the book's dust-jacket and not (just) "the cover."

17. Secondly, this statement is also false, because the business park in New York City is called "The World Trade Center Plaza, ("W.T.C.)" and not the *"Twin Towers."*

18. This compound false statement is to mislead the Court that the very same W.T.C. Complex "are present" in both artworks; even when one is the old version (twin towers) and the current new version (single tower) *(see Complaint Paragraph-52)* the photo, in *The Link,* photos submission via Complaint, ¶¶-17, 51, 52 and 55, and W.T.C.'s photo also submitted by Paramount as ECF-No. 16-2 *(pg. ID #:758).*

19. Here again the book dust-jacket found on Complaint, ¶-51.



20. On the back-cover fold, or the left of the Plaintiff (wearing two types of clothing, modern and Egyptian), are the buildings of the World Trade Center Plaza as well as towers formally known as World Financial Center towers: WFC-1, WFC-2, and WFC-3 (see map below on its left); in 2014 "WFC" was

renamed "Brookfield Place."



Photo Source: Wikipedia's page: World Trade Center (1973–2001)

21. In Complaint's ¶-52 is a close up of the backcover artwork.  Which part of the World Trade Center Complex is view as well as three buildings of Brookfield Place.



22. On Paragraph-52, the photo (below) shows two versions of the World

Trade Center in both the Brookfield Place appears in both on the left, and one of the Brookfied Place towers also appears on the right of the Paramount's DVD BluRay cover (partially covered by supporting actress' machine gun).



**B) The Second False Statement:**

        a)    Paramount wrote:

*Infinite's cover art depicts the character of Evan between a mountain peak (the location of the Hub) and <u>an entirely different New York cityscape.</u>*

23. Plaintiff alleges with emphasis that if his is indeed "<u>*an entirely different New York cityscape*</u>" then it a false statement based on hearsay, otherwise Paramount would have provided the name of the skyscraper and location on *Infinite's* artcover.

///

**C) The Third False Statement:**

24. Paramount wrote:

> *Infinite's cover art depicts the character of Evan between a <u>mountain peak (the location of the Hub)</u> and an entirely different New York cityscape.*



25. The source this photo above is Paramount's DVD Blu-Ray the screengrab (at 35:33 mins). The photo proves that Paramount's statement is false because *The Hub* is not located at *"a mountain* [pyramidal] *peak;"* instead, it is located near a placid ocean bay on the side of rocky (eroded plateau) with dense vegetation and currently the rocky formation is closer to <u>oblong shaped</u> short hills.



26. The fictional location, as *"The Hub"* appears that was designed via computer graphic imaging ("CGI") using Ha Long Bay (photo above) located in a bay between south China and northeast Vietnam.

## III. LIST OF STATUTORY VIOLATIONS ALLEGED ABOVE

27. The list of the violations accumulated in ECF.No. 13 and 16 giving rise to this *Motion to Strike* is as follows:

i) **Court Order ECF.No. 15;** the Defendant Paramount failed to adhere to Court's instructions to only comply to L.R. 11–3.6 and L.R. 11–6.2; instead, Paramount re-edited its whole *Motion to Dismiss* including deletion of footnotes.

ii) **L.R. 7-3 Conference of Counsel Prior to Filing of Motions;** Paramount failed to confer with Plaintiff <u>regarding new edits</u> in its *Motion to Dismiss.*

iii) **L.R. 15-2 Complete Document;** Defendant failed to comply because its *<u>amended motion</u>* was filed in violation of Fed.R.Civ.P. 4(e)(3) and <u>without first obtaining a granted *Leave*</u> to amend by the Court.

iv) L.R. 83-7(b) or L.R. 83-7(c) Violation of Court Order;  Paramount willfully usurped  Court Order ECF.No.15.  Paramount did not offered <u>any excusable neglect</u> for its violations of Court's Order on its filings on 10/17/2024.

v) **Fed.R.Civ.P. 4(e)(3),** Paramount's Motion to Dismiss was filed two days after the 60 days prescribed by Fed.R.Civ.P. 4(e)(3); and in violation of the Local Rules detailed above in ¶-28*ii* and ¶-28*iii* and also in abusing the guidelines of Court Order ECF-15.

vi) **California Rules of Prof. Conduct 3.3 Candor Towards Tribunal;** as delineated above from ¶¶-12 through ¶-27; Paramount offered three false statements to the Tribunal on its Motion to Dismiss ECF.No. 13.

vii)    **California Rules of Prof. Conduct 3.4(c) Fairness to Opposing Party or Counsel;** Paramount by offering false statement to Plaintiff as also delineated above from ¶¶-12 through ¶-27.

viii)    **18 U.S. Code § 1001(a)(2);** Paramount used its false statements in its *Motion to Dismiss (ECF.No.13)* footnote #7 on ECF.No. 13 also delineated above from ¶¶-12 through ¶-27 to obtain a favored ruling and to injury the Plaintiff.

ix) **18 U.S. Code § 1519;** Paramount willfully usurped Court Order ECF.No. 15 to cover-up and delete or edit the false statements offered to the Court delineated above from ¶¶-12 through ¶-27 (docketed as ECF-No. 13).

28. The Plaintiff is neither a law student nor has ghost representation by counsel.  The above enumerated laws were provided via Google Search; in fact, the Plaintiff cannot even Sheppardize his arguments using Lexis-Nexis sites.

29. The Plaintiff neither seeking disciplinary action against Paramount's Esquire(s) nor a "gotcha" win against Paramount Pictures.  However, the evidence docketed is overwhelming in recording: 1) false statements, 2) disobedience of Court Order ECF.No. 15, and Fed.R.Civ.P. 4(e)(3); willful cover-up of the same.

## IV. LEGAL STANDARD

30. Paramount's Law-firm Loeb & Loeb LLP website history claims to have a league of 450 lawyers with its genesis in the year 1909; and with offices located in Nashville, Chicago, Washington, DC, San Francisco, Beijing, and Hong Kong.

31. Esquire David Grossman's law-firm profile does not show him as a novice either; quoting his profile:

> David has been consistently recognized <u>as one of the top intellectual property lawyers</u> in California by the Daily

*Journal. He serves as an editor of Loeb & Loeb's IP/Entertainment Law Weekly Case Update for Content Creators, Owners and Distributors.*

32. These two paragraphs *supra* are relevant to prove that neither Paramount's legal team nor Paramount's attorney of record are neophytes to the judicial system.  Therefore, there is a preponderance of evidence in this civil lawsuit that all the actions to make false statements, violation of Court Order and subsequent cover-up were neither made by a novice nor with overwhelming experience of the consequence of their misdeeds.

33. The Defendant Paramount Pictures was dully served and replied with a Waiver of Service which Plaintiff executed as ECF.No. 11.

34. As a benefit to the expedition of service of summons the Paramount was granted 60 days under Fed.R.Civ.P. 4(e)(3) (instead of the usual 21 days when serviced by a process server).

35. The Defendant conferred in writing with Plaintiff dutifully as prescribed by L.R. 7–3; a week before filing its *Motion to Dismiss* as ECF.No. 13 and other supporting documents in tandem.

36. During conferral, Paramount Pictures never approached the Plaintiff requesting an extension of time to edit its *Answer* or its *Motion to Dismiss* the *Complaint.*

37. It is beyond reasonable doubt that Court Order ECF.No. 15 did not give Paramount Pictures <u>authority to re-edit</u> its *Motion to Dismiss.*

38. It is beyond reasonable doubt that Fed.R.Civ.P. 4(e)(3) did not give Paramount Pictures <u>authority</u> to re-edit its *Motion to Dismiss* two days after the deadline on 10/17/2024.

39. It is beyond reasonable doubt that neither the Court nor the Plaintiff were contacted by Paramount Pictures to grant it a *Leave* thus <u>authority to re-edit</u> its *Motion to Dismiss* <u>two days after the deadline</u> on 10/17/2024.

40. Substantively, Paramount Pictures could have filed a *Leave* in tandem with its ECF. No. 16 announcing its new edits did it not.

41. It is beyond reasonable doubt that Paramount did not confer on the new edits pursuant to L.R. 7–3; did not ask for a *Leave* under L.R. 15–2 and therefore in disobedience with Court Order ECF.No. 15 exposing Counsel and Party to disciplinary sanctions under L.R. 83-7(b) or alternatively L.R. 83-7(c).

42. The *Motion to Dismiss* under ECF.No, 13 contains 7192 words, which included the false statements delineated above from ¶¶-12 through ¶-27.

43. These willful false statements could open disciplinary actions under C.R.Prof.C. Rule 3.3 and C.R.Prof.C. Rule 3.4(c).

44. Notwithstanding, a willfully provided false statement to the Court could open criminal actions under **18 U.S. Code § 1001(a)(2).**

45. The *Motion to Dismiss* under ECF.No, 16 contains 5596 words; therefore, it is <u>short of 1596 words including the deletion of the false statements.</u>

46. The Plaintiff alleges and a reasonable jury would recognize that the unauthorized new edits usurped Court Order ECF.No. 15 to cover up the false statements provided to the Court; thus further exposing Paramount to criminal charges under 18 U.S. Code § 1519.

47. It is axiomatic that on the deadline to file an "Answer" or *Motion to Dismiss,* Paramount failed to comply with word count and formatting, even when it was typed by *one of the top intellectual lawyers in California.* The Court *sua sponte* granted equanimity to the Defendant in bringing the Paramount's filings into compliance; instead, Paramount usurped or abused the Court's good nature in bad-faith to continue to edit and to cover-up its willful false statements.

48. Under Legal Standards and in simple terms Paramount's "answer" failed with a federal rule (Fed.R.Civ.P. 4(e)(3)) and failed with Court's courtesy compliance *Order.* Therefore, via Fed.R.Civ.P. 41(b) *sua sponte* the Court has discretion to move this case to damages, because Defendant Paramount failed to

adhere to civil procedure in its two deadlines: firstly on 10/15/2024 and secondly on 10/17/2024.  At Court's discretion, the Court may further take disciplinary actions or sanctions for disobedience of his Order.

49. The Fed.R.Civ.P. 41(b) is neither partial nor unilateral; *Link v. Wabash Railroad* was a significant landmark case demonstrating the federal court's ability to exercise disciplinary actions against defendants—or plaintiffs—who do not adhere to procedural requirements. *Link* established that federal courts have the discretion to dismiss cases when parties do not follow procedural rules, reinforcing the importance of compliance with court procedures in civil litigation.

50. In the case of *Link v. Wabash Railroad Co., 370 U.S. 626 (1962),* the Supreme Court addressed the authority of federal courts to dismiss cases for failure to comply with court rules, specifically under the context of Rule 41(b).  In this case, the U.S. Supreme Court held that a district court has the inherent authority to dismiss a case for lack of prosecution, including when a plaintiff fails to comply with court orders or rules.

| The difference in *Link v. Wasbash* versus *Sandy v. Paramount* under Rule 41(b) | |
|---|---|
| *Link v. Wasbash* | *Sandy v. Paramount* |
| Plaintiff's counsel without exculpatory defense, failed to appear at a pretrial hearing. Case was dismissed | Paramount without exculpatory defense missed double-line formatting. (For Loeb&Loeb LLC. incompetence should not be an exculpatory defense). |
| | Paramount without exculpatory defense missed word-count certification. (For Loeb&Loeb LLC. incompetence should not be an exculpatory defense). |
| | Paramount without exculpatory defense to usurped Court's Order to include new |

| | |
|---|---|
| | and unauthorized edits. |
| | Paramount without exculpatory defense to violate Fed.R.Civ.P. 4(e)(3). |
| | Paramount without exculpatory defense to presented false statements to the Court and Plaintiff in ECF.No. 13. |
| | Paramount without exculpatory defense to cover up, and delete 1596 words including its false statements to the Court and Plaintiff in ECF.No. 16. |

51. Hanlon's Razor claims *"Never attribute to malice that which is adequately explained by stupidity."* Plaintiff alleges that Esquire Grossman is smart and competent. Further, Grossman did not act alone; via conferral Esquire Erin Audrey Shields CA# 337121, she volunteered to the Plaintiff in writing that she was going to file a notice of appearance, she did not. Furthermore, Paramount is a multibillion dollar corporation, and it has its own in-house legal team.

52. Plaintiff alleges that it cannot be malice because <u>Paramount is nothing more than a capitalist contract for its shareholders</u>, instead of incompetence or malice; Plaintiff alleges these acts are a result of hubris or swagger; thus, the hubris of being above the law. In the next chapter Plaintiff will show the history of challenging procedural rules in another copyright case.

# V. BACKGROUND
### *NOT THE FIRST LIGHTNING TO STRIKE THE SAME VENUE*

53. The Plaintiff will show <u>in a relevant part,</u> a pattern of hubris of being above the law and not adhering to the procedural rules before this case.

54. As Exhibit-02 is a declaration of Esquire Marc Toberoff, in support to a *motion to strike* against Paramount validating what Plaintiff alleges to be a history of hubris *(in Yonays v. Paramount Case 2:22-cv-03846-PA-GJS Document 82-1 Filed 12/03/23).*

55. In sum, Exhibit-02 narrates:

a) Paramount withheld evidence during the discovery windows *(Exb-02 ¶-1);*

b) Paramount stonewalled evidence during conferrals *(Exb-02 ¶¶- 9–10 );*

c) Finally, Paramount's video contained no authentication *(Exb-02 ¶¶-11–12).*

56. Esquire Toberoff in Exhibit-02 narrated Paramount's behavior even with another lawfirm (O'Melveny & Myers LLP); consequently; a *2023-motion to strike,* shows:

a) Paramount violated procedural process;

b) Paramount violated procedural process as a defendant;

c) Paramount violated procedural process in a copyright lawsuit;

d) Paramount violated procedural process in the same venue.

### THIS MOTION TO STRIKE COULD HAVE BEEN AVOIDED:

57. Prior to this motion to Plaintiff via conferral on 10/18/2024, offered the option to mutually withdraw documents under ECF.No. 16 because it was in violation of Fed.R.Civ.P. 4(e)(3) and the Court Order ECF.No.15, *(see Exhibit-03 Page-ID 2, line 18).*

58. Although the email (Exhibit-03) was detailed and explanatory, Esquire Grossman played dumb in writing with a false pretense that he could not understand the Option-1 offered to him on Exhibit-03. *(see Grossman's guile Exhibit-04); "Mr. Sandy,  I am not sure what you are requesting."*

59. Because Esquire Grossman played obtuse in his email *(Exhibit-04);* Plaintiff sent a draft of this *motion* written by then up to paragraph 49.

60. Although the Parties disagreed in most, the telephone call was civil

and cordial on 10/21/2024 10AM Pacific Time, and lasted about 100 minutes.

61. The Plaintiff Sandy asked Esquire Grossman point blank, *"Under what authority did you violate the Court Order [ECF.No, 15] adding new edits, when the Order only gave you discretion to double-line and add a certificate of word-count?"* Esquire Grossman replied *"The Clerk accepted my filing, and the Clerk did not refuse my filing." (Dialog paragraphed and written from memory).*

62. In "digging a deeper hole" for Paramount, (which was not even the level of hubris found in *Link v. Wabash Railroad Co.*) Esquire Grossman volunteered in the audio conferral that he could overcome a Judge's Order simply if the Clerk accepted Paramount's undiscovered violations. If Clerk was not aware of the violations of Fed.R.Civ.P. 4(e)(3) and rules of Order ECF.No. 15, *he was safe* [paraphrased].

63. For the record, Esquire Grossman further provided legal advice to the *Pro-Se litigant* or Plaintiff Sandy; claiming that a *motion to strike* is not the proper procedural tool, even when motions to strike are repeated used; in fact, this *motion* is based on Esquire Toberoff's *motion to strike* [non-procedural acts] *(see Case 2:22-cv-03846-PA-GJS Document 82 Filed 12/03/23)* whose supporting declaration is attached as Exhibit-02.

## VI. ANOTHER LEGAL STANDARD TO STRIKE EFC.NO. 16
### *THE LEGAL REASON WHY ECF.NO. 16 IS WORSE THAN ECF.NO. 13*

### *PART 1 OF 5: MAJOR INSUFFICIENT DEFENSE ON MOTIVE*

64. A substantial part of the Complaint is that *Infinite* became the secular version of *The Link.* Complaint's ¶¶-29 through ¶-45 shows a Chapter *Paramount's Reasons for Stealing "The Link."* The Chapter's summary: religious themes cause major harm for Hollywood. The Complaint's ¶¶-36 through ¶-43 documents many financial loses taken by Studios; ¶¶-44 alleged that a mere

connection with *The Link* could have brought between $60 million to $300 million in damages.

65. Because Paramount's neither version of its *motion to strike* bothered to defend or deny Complaint's ¶¶-29 through ¶-45; then a *motion to strike* is the proper motion to strike on the grounds of *insufficient defense.*

### PART 2 OF 5: MAJOR INSUFFICIENT DEFENSE ON COMPARISON

66. While Plaintiff alleged and compared *Evan-Infinite* as a secular version of *Sydney-Link,* Paramount did not address their similarities from a secular point of view and instead insisted on concentrating on the religious differences.

67. Characters of *Infinite* and characters of *The Link* are same characters in different circumstances.

68. For instance: *Sir Robin of Locksley* (secretly as *Robin Hood)*; *Don Diego de la Vega* (secretly as *The Zorro*); and *Bruce Wayne* (secretly as *Batman*) are the same character because all three are rich patrons who secretly fight corruption as vigilantes. However, they are in different circumstances because one was in feudal Britain, one in California's haciendas, and finally one in an urban metropolis. When it came time to give *Batman* a sidekick, the creators named him *Robin* as a homage to the original version of *Batman—Robin Hood.* What Paramount did in most of its *motion to dismiss* would be equivalent to saying, *"Batman and Robin Hood are not the same characters, because one wears green and the other black; one fights with bows, sword, and arrows in feudal times and the other with fancy and expensive gadgets in a modern metropolis."*

69. Because Paramount's neither version of its *motion to strike* bothered to defend the characters comparison from a secular point of view, as the Plaintiff alleged, then a *motion to strike* is the proper motion to strike on the grounds of *insufficient defense.*

### PART 3 OF 5: MAJOR INSUFFICIENT DEFENSE ON MISDIRECTION

70. From Complaint's ¶¶-68 through ¶-90 Plaintiff accused Paramount's of misdirecting the theft of his copyright by attributing *Infinite* to another book— *The Reincartionist Papers ("TRP")*.

71. The Paramount's obvious hypocrisy is while it claims that *The Link* only contains "unprotected elements," then <u>why would Paramount purchase the same unprotected elements from *TRP?*</u>

72. However, a reasonable jury would ponder... <u>*"Why would a capitalist corporation seeking profits to its shareholders would purchase an unprotected theme from TRP unless Paramount's goal was to misdirect its theft from The Link?"*</u>

73. Because Paramount's neither version of its *motion to strike* bothered to defend or deny the misdirection alleged from ¶¶-68 through ¶-90, then a *motion to strike* is the proper motion to strike on the grounds of *insufficient defense.*

### PART 4 OF 5: THE MISCHARACTERIZATION OF PRECEDENT

74. Paramount concentrated in a single defense, "access." In fact, both versions of the *motion to dismiss* (13 or 16). On Exhibit-03 (Pgs 5–8) is also conferral on a future Motion for Summary Judgment for Paramount's failure to deny or defend several allegation pursuant to Fed.R.Civ.P. 55(a) and alternative Fed.R.Civ.P. 8(b).

75. In fact, Exhibit-03 from page 5 through 8 (items listed from "¶-a" through "¶-v" [thus, 22 items]). Paramount failed to defend and deny all of them, again Paramount has a single defense (on "access") so Paramount cited Lexis-Nexis *ad nauseam* precedents on "access."

76. Plaintiff was prescient of such "access" defense; so, in Complaint, from ¶¶-15 through ¶-21. It is Paramount's argument that unless Plaintiff has a valid documented connection with a Paramount executive, then the Plaintiff

cannot prove that his novel was copied by Paramount.

77. Pursuant to Fed.R.Civ.P. 12(f); Paramount failed to defend and deny a cited ruling by Hon. Judge Christina Snyder, in fact, Paramount made a mischaracterization via an unqualified remark.

78. Regarding "access," Judge Snyder's new vision in the new age of instant access via the world-wide-web on "wide dissemination to prove access," it is simply unjust; one of the best rulings is found in *Gray v. Hudson,* Hon. Judge Snyder heard arguments on wide dissemination and access for close to three years.

79. Plaintiff requotes S Hon. Judge Snyder from his Complaint's ¶-21:

> *"Although defendants [Hudson et.al.] insist that a showing of commercial exploitation is necessary to prove access, such reasoning would make it permissible to infringe on a copyrighted work simply because it was never for sale." (Gray v. Hudson 2:15-cv05642-CAS (JCx) Doc.No. 299, Page-8).*

80. However, Paramount provided a mischaracterization of Hon. Judge's citation, which is found on footnote-3 in *Motion to Dismiss,* either version on ECF-13 or ECF.No. 16 which both reads:

> [Footnote] *3 Plaintiff suggests that Gray v. Perry, No. 2:15-cv-05642-CAS (JCx), 2018 U.S. Dist. LEXIS 138263 (C.D. Cal. Aug. 13, 2018) somehow invalidates the above precedents. Compl. ¶ 21. It does not. In Gray, the court merely held that a triable issue on access existed where plaintiff's song had "achieved critical success, including a Grammy nomination," and had been viewed "millions of times on YouTube and Myspace." Id. at \*12 (emphasis added). It did not remotely suggest that a work's mere availability on the Internet is sufficient to plead access. (see footnote 3 in ECF.No. 13 pg. ID#:684 or ECF.No. 16 pg. ID#:743).*

81.        Because Paramount failed to defend and deny Hon. Judge Snyder's opinion; in fact, Paramount's "footnote #3" added a mischaracterization of the Judge's opinion. Fed.R.Civ.P. 12(f) reads:

> *(f) Motion to Strike. The court may strike from a pleading an* <u>*insufficient defense*</u> *or any redundant, immaterial, impertinent, or scandalous matter. The court may act:*
>
> *(1) on its own; or*
>
> *(2) on motion made by a party either before responding to the pleading or, if a response is not allowed, within 21 days after being served with the pleading.*

82. Therefore, Paramount's "footnote #3" offered *insufficient defense* on why Hon. Judge's Snyder opinion was not valid.  Paramount instead misdirected and offered a mischaracterization of the Judge's cited ruling in Complaint's ¶-21.

### PART 5 OF 5: DELETED FALSE STATEMENTS

83. The "false statements" detailed *supra* from ¶¶-12 through ¶-27 and found in ECF.No. 13 footnote #7 should qualify as *immaterial, impertinent and scandalous matter*.  However, at least it was an offered flimsy defense on ECF.No. 13 was deleted from ECF.No. 16.

84. Therefore, the unauthorized version or second version of Paramount's *motion to dismiss* is worse than the first for not deleting the false statements as a defense.

85. The Plaintiff conferred with Paramount on his intent to file an Motion for Summary Judgement for a plethora of undenied and undefended allegations; which a great number of them are already listed in Exhibit-03 from page-ID 5 through page-ID 8 (items listed from "¶-a" through "¶-v" [thus, 22 items]).

86. To narrate each (each undefended allegation) in this motion would far exceed the allowed word-count; in fact, the Plaintiff <u>may</u> even have to file a *Leave*

to exceed the word-count in his *Motion for Summary Judgment*.

# VII. SUMMARY OF THIS MOTION

87. The summary of this motion using the whole alphabet is as follows:

a) Paramount failed to obey world-count prescribed by L.R. 11-6.1.

b) Paramount failed to double-line its motion under  L.R. 11–3.6.

c) Paramount failed to include a certificate of word-count under L.R. 11-6.2.

d) Court Order sought in bringing Paramount into compliance.

e) Paramount abused Court Order ECF.No. 15 to include new edits without *Leave.*

f) Paramount violated Fed.R.Civ.P. 4(e)(3) by filing its motion 62 days after Waiver of Service instead of 60 days.

g) Paramount disobeyed Court Order ECF.No. 15 to sneak in new edits.

h) Paramount new edits were to cover up false statements on the record.

i) Paramount's false statements are in violation of California Rules of Prof. Conduct 3.3.

j) Paramount's false statements are in violation of California Rules of Prof. Conduct 3.4.

k) Paramount's willful false statements to the Court are in violation of 18 U.S. Code § 1001(a)(2).

l) Paramount's willful cover-up of false statements to the Court is in violation of 18 U.S. Code § 1519.

m) Paramount failed to confer with Plaintiff to amend its motion with new edits as prescribed by L.R. 7–3.

n) Paramount's new edits were in failure to first obtain a leave prescribed under L.R. 15–2.

o) Paramount offered no excusable neglect, thus exposed itself and its esquires under sanctions L.R. 83-7(b) or L.R. 83-7(c) for violating Court Order.

p) Paramount Pictures is not a novice to justice and has its own legal department.

r) Paramount's legal team is no neophyte to justice; the team is an international corporation with about 450 esquires founded in 1909.

s) In Exhibit-02, Esquire Toberoff described Paramount's similar impetuousness in the same district and venue.

t) Esquire Grossman has been recognized as *top intellectual property lawyers.*

u) Esquire Grossman under audio conferral, said that his authority to modify the *motion to dismiss* was under the fact that District Clerk simply did not dicover his abuse of process.

v) Plaintiff alleges that Clerk's authority does not exceed the authority in Court's Order.

w) Paramount's actions in *Sandy v. Paramount* far exceeds inexcusable neglects ruled by the Supreme Court in *Link v. Wabash Railroad Co.* detailed in ¶-51.

x) The Court has discretion under *Link v. Wabash* move the case towards damages, pursuant to Fed.R.Civ.P. 41(b).

y) The Court has discretion under Fed.R.Civ.P. 12(f) to move the case towards damages due to *insufficient defense* or alike.

z) On Exhibit-03, Plaintiff offered Paramount an option to avoid this *motion to strike.*

## VIII. CONCLUSION

88. From 06/30/2021 to today, the Plaintiff has been consistent with Paramount, because on 06/30/2021 via a *Cease and Desist Letter (See Complaint's Exhibit-09)* the Plaintiff was opened to an offer to avoid this lawsuit, and as recent as 10/08/2024 *(see ECF.No. 16-2 pg.id#:777 line 22);* and more recently, as attached *Exhibit-03 Pg-ID 8, line 23,* the Plaintiff remains opened to an offer to withdraw his lawsuit.  However, Paramount offered a poorly pleaded motion to

dismiss with false statements, defied Court Order to cover up its misdeeds, notwithstanding a plethora of undenied and undefended allegations.

89. Paramount's inexcusable collection of misdeeds far exceeded the single one found in *Link v. Wabash Railroad Co.*

90. The Plaintiff prays for the Court not to allow Paramount to remain above the law even if Paramount has hired the most expensive attorneys in Los Angeles County.

91. Respectfully submitted on 27th day of October, 2024.

Redstone, CO 10/27/2024

By:   */s/ Bayardo Reno Sandy*

Bayardo Reno Sandy; Pro Se Plaintiff

# CERTIFICATE OF COMPLIANCE

"The undersigned, is self-represented on the record as the Plaintiff, certifies that this brief contains 4797 words, which complies with the word limit of L.R. 11-6.1.

Redstone, CO 10/27/2024

By:   */s/ Bayardo Reno Sandy*

Bayardo Reno Sandy; Pro Se Plaintiff